# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LISA SUMMERS, Personal Representative )
of the Estate of KESHALL ANDERSON, )
KISHA BAILEY, Individually and as the )
Legal Guardian of JORDAN DOMINIQUE )
ROBINSON, JR., a minor, MICHAEL )
BAILEY, Individually, )
                                  )
        Plaintiffs, )
                                  )
        v. )        C.A. No. N18C-07-234 VLM
                                  )
CABELA'S WHOLESALE, INC., a )
Nebraska Corporation registered in )
Delaware, Now Doing Business as )
CABELA'S WHOLESALE, LLC, )
a Nebraska Limited Liability )
Company registered in Delaware, )
                                  )
        Defendant. )

## MEMORANDUM OPINION

Submitted: December 10, 2018
Decided: March 29, 2019

*Upon Consideration of Cabela's Motion to Dismiss
Plaintiffs' First Amended Complaint,*
**GRANTED**.

Francis G.X. Pileggi, Esq., of Eckert Seamans Cherin & Mellott, LLC, Wilmington, Delaware; James B. Vogts, Esq. (*argued*), of Swanson, Martin & Bell LLP, Chicago, Illinois. *Attorneys for Defendant.*

Bruce L. Hudson, Esq., of Hudson & Castle Law, LLC, Wilmington, Delaware; Jonathan E. Lowy, Esq. (*argued*), and Erin C. Davis, Esq., of Brady Center to Prevent Gun Violence, Washington, D.C. *Attorneys for Plaintiffs.*

**MEDINILLA, J.**

## INTRODUCTION

On July 28, 2016, Brilena Hardwick ("Hardwick") purchased a firearm and ammunition from Defendant Cabela's Wholesale, Inc. now doing business as Cabela's Wholesale, LLC ("Cabela's"). Months later, the firearm was used and caused the death of Keshall Anderson ("Anderson") in a drive-by shooting. Plaintiffs Lisa Summers, Kisha Bailey, and Michael Bailey (collectively "Plaintiffs") bring this action either on behalf of the Estate of Anderson, as legal guardian for minor Jordan Dominique Robinson, Jr., or in their individual capacities. They seek damages asserting that Cabela's was negligent in selling the firearm to a straw purchaser in violation of federal and state laws. Cabela's moves to dismiss under Superior Court Civil Rule 12(b)(6), asserting that Plaintiffs fail to state a claim where the clear mandatory provisions under 11 *Del. C.* § 1448A(d) afford a complete defense in this case. After consideration of the parties' briefings, oral arguments and the record in this case, for the reasons stated below, Cabela's Motion to Dismiss Plaintiffs' First Amended Complaint is **GRANTED.**

## FACTUAL AND PROCEDURAL HISTORY

On September 18, 2016, 19-year-old Anderson became the 18th person that year who died by gun violence in the City of Wilmington.[1] This young woman was caught in the crossfire of a drive-by shooting and killed while walking down the

_____
[1] Am. Compl. ¶ 64.

2

street.[2] After police investigated the shooting, the firearm was traced back to Cabela's. This matter involves the sale of that firearm.

On July 28, 2016, Hardwick entered the Cabela's store at the Christiana Mall and purchased an Iberia Firearms JCP, .40 caliber Smith & Wesson pistol ("firearm") and a box of ammunition.[3] It is alleged John Kuligowski ("Kuligowski"), Hardwick's boyfriend, drove Hardwick to the store and waited in the parking lot.[4] He did not enter the store nor accompany her. All transactions were conducted by Hardwick. While in the store, Plaintiffs allege that Hardwick "displayed erratic behavior, running up and down the aisles, and remained in regular cell phone communication with Kuligowski through both text messages and phone calls."[5] She selected a firearm and filled out the required paperwork.

During Hardwick's transaction with Cabela's employee responsible for processing the sale/transfer, she provided valid identification and completed the required forms. This included the Firearms Transaction Record form promulgated by the United States Department of Justice Bureau of Alcohol, Tobacco, Firearms

---

[2] Am. Compl. ¶¶ 60-61.

[3] *Id.* ¶ 38.

[4] *See id.* ¶ 41.

[5] *Id.* ¶ 42.

3

and Explosives ("Form 4473").[6] While completing the transaction, Cabela's conducted a criminal history background check pursuant to the National Instant Criminal Background Check System ("NICS").[7] The Federal Bureau of Investigation ("FBI") informed Cabela's that Hardwick passed the NICS background check and it could "proceed" with the sale of the firearm.[8] She paid for the firearm and one box of ammunition. It is alleged that she then gave the gun to Kuligowski.

Kuligowski is a convicted felon and a person prohibited from purchasing or possessing a firearm due to his criminal record.[9] He neither purchased the firearm nor used it in the fatal shooting of Anderson. His role is that he served as the alleged conduit that placed the weapon into the criminal market that allowed two juveniles to get their hands on the gun that killed Anderson.[10]

On September 21, 2018, Plaintiffs filed their First Amended Complaint.[11]

---

[6] Am. Compl. ¶¶ 43-44. *See also* Defs.' Mot. to Dismiss Pls.' First Am. Compl., Ex. 3 [hereinafter Defs.' Mot.].

[7] Am. Compl. ¶ 54.

[8] Defs.' Mot. ¶¶ 3-4.

[9] Am. Compl. ¶ 37.

[10] *Id.* ¶¶ 58-59. It is alleged that Kuligowski supplied the firearm to the criminal market where Abdullah Brown ("Brown") and Deonta Carney ("Carney") obtained it when they were only sixteen years old and not legally able to possess or purchase a firearm.

[11] *See generally id.* Plaintiffs filed their original Complaint on July 25, 2018.

Plaintiffs seek damages and allege claims of negligence *per se*, negligence, negligent entrustment, negligent training and supervision, public nuisance, wrongful death, and survivorship against Cabela's. On October 1, 2018, Cabela's filed this Motion to Dismiss under Superior Court Rule 12(b)(6). All responses and replies were filed by November 30, 2018. The Court held oral arguments on December 10, 2018. The matter is ripe for review.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."[12] All well-pleaded allegations in the complaint must be accepted as true for purposes of a Rule 12(b)(6) motion.[13] Even vague allegations may be well-pleaded if they give the opposing party notice of the claim.[14] Additionally, all reasonable inferences must be drawn in favor of the non-moving party.[15] Although reasonable inferences are drawn in favor of the non-moving party, the Court will not "accept conclusory allegations unsupported by specific facts" and declines "to draw unreasonable inferences in

---

[12] Super. Ct. Civ. R. 12(b)(6).

[13] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[14] *In re General Motors (Hughes) Shareholder Litigation*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

[15] *Id.* (quoting *Savor, Inc.*, 812 A.2d at 896-97).

favor of the non-moving party."[16] A motion to dismiss must be denied if "a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[17]

## PARTIES' CONTENTIONS

Cabela's argues that 11 *Del. C.* § 1448A(d) affords a complete defense to any cause of action for damages that relates to the lawful transfer of a firearm.[18] It maintains the complete defense is applicable where it performed a compliant transfer of the firearm to Hardwick by conducting a NICS background check and receiving a "proceed" response for the sale. Cabela's further argues that Plaintiffs failed to allege any facts that Cabela's provided false information for the calculated purpose of helping her purchase the firearm illegally.[19] Therefore, under § 1448A(d), because Plaintiffs' claims seek damages, they must be dismissed for failure to state a claim under Rule 12(b)(6). Further, on the public nuisance claim, Cabela's argues the same 12(b)(6) remedy applies where, under Delaware law, public nuisance

---

[16] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[17] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[18] Defs.' Mot. ¶ 7. Cabela's points out that other states provide broad immunity to firearm dealers for damages that are caused by another's misuse of a firearm. *See, e.g.*, Ark. Code Ann. § 16-116-302; Colo. Rev. Stat. Ann. § 13-21-504.5; Ind. Code Ann. § 34-12-3-3; Neb. Rev. Stat. Ann. § 69-2417.

[19] Defs.' Reply Br. in Support of Mot. to Dismiss at 12 (citing *Clinton v. Enterprise Rent-A-Car*, 977 A.2d 892, 895 (Del. 2009)) [hereinafter Defs.' Reply Br.].

claims are limited to land-use situations and have not been recognized for products.[20]

Plaintiffs argue that Cabela's failed to comply with § 1448A(a) and cannot be afforded the complete defense provided in §1448A(d).[21] Specifically, Plaintiffs alleged that Hardwick provided a false address on the Form 4473,[22] and that she further provided a "false statement when she certified that she was the actual buyer/transferee on Form 4473."[23] They argue that Cabela's thus violated 28 C.F.R. § 25.11(b)(1) by knowingly providing this incorrect information to the NICS system about the actual purchaser when it provided Hardwick's name, despite the "red flags" that she was a straw purchaser.[24]

Plaintiffs also raise constitutional challenges. They argue that 11 *Del. C.* § 1448A must be narrowly construed because, according to Cabela's, it "abrogates some common law tort rights depriving some gun violence victims of their rights to recover from gun dealers for damages caused by their negligent and unlawful acts."[25] Plaintiffs argue that Cabela's interpretation of this statute is inconsistent with

---

[20] Defs.' Reply Br. at 13 n.6 (citing *Sills v. Smith & Wesson Corp.*, 2000 WL 33113806, at *7 (Del. Super. Dec. 1, 2000)).

[21] Pls.' Opp. to Defs.' Mot. to Dismiss Pls.' First Am. Compl. at 16-20 [hereinafter Pls.' Opp.].

[22] Am. Compl. ¶ 43.

[23] *Id.* ¶ 44.

[24] Pls.' Opp. at 18-19.

[25] *Id.* at 20.

Delaware's legislative intent, by asserting that the intent of §§ 1448A and 1448B was to extend background check requirements to gun sales by unlicensed persons.[26] Plaintiffs assert that Cabela's interpretation should be rejected under the principle of constitutional avoidance.[27]

Lastly, Plaintiffs argue, in the alternative, that if 11 *Del. C.* § 1448A(d) bars their claims, that this Court must declare the statute unconstitutional, namely under Article I, § 9 of the Delaware Constitution (Protection of the Right to a Remedy for Injury), and the Due Process and the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[28] In response, Cabela's maintains that the statutory provisions of § 1448A(d) pass constitutional muster.[29]

This is a matter of first impression for the Court.

## DISCUSSION

### I. Gun Control in Delaware

Cabela's is a federal firearm licensee subject to both state and federal statutes and regulations that deal with the sale and transfer of firearms.[30] Federal and state

---

[26] Pls.' Opp. at 21-25.

[27] *See id.* at 25.

[28] *Id.* at 25-29.

[29] Defs.' Reply Br. at 14-26.

[30] *See* 18 U.S.C. §§ 921 *et seq.*

laws contain nuanced provisions regarding the compliance requirements imposed upon federal firearm licensees such as Cabela's when it executes a sale/transfer, and to what extent it may avail itself to defenses when faced with claims seeking damages as a result of such transfers.

Various courts have interpreted the federal law, in particular the Protection of Lawful Commerce in Arms Act ("PLCAA").[31] The PLCAA is not at issue in this case and is offered only to give context as to how other courts have considered similar claims. The PLCAA provides that a "qualified civil liability action may not be brought in any Federal or State court,"[32] which includes an action brought against a manufacturer or seller of a qualified product "for damages, punitive damages, injunctive or declaratory relief, abatement…resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."[33]

---

[31] *See Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1222-1227 (D. Colo. 2015) (identifying that the "Colorado statute and the PLCAA share the objective of shielding firearms manufacturers and dealers from liability for injuries caused by third parties using non-defective firearms"); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 147-151 (N.Y. App. Div. 2012) (discussing the PLCAA's exceptions, including the predicate exception); *Soto v. Bushmaster Firearms International, LLC*, – A.3d –, – , 2019 WL 1187339, at *29-48 (Conn. Mar. 19, 2019) (interpreting both PLCAA and the Connecticut Unfair Trade Practices Act ("CUTPA") to determine if PLCAA was intended to shield defendants from liability for the types of CUTPA violations that plaintiffs alleged).

[32] 15 U.S.C. § 7902(a).

[33] 15 U.S.C. § 7903(5)(A).

The PLCAA provides exceptions for when a civil action may be brought against a manufacturer or dealer, including when the manufacturer or dealer "knowingly" violates a "State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought...."[34] This exception is known as the predicate exception.[35] Unlike in other states that also have immunity provisions for firearm dealers, Plaintiffs here do not argue that the PLCAA preempts § 1448A(d).[36] At the outset, all parties therefore agree that the Delaware statutory defense found in § 1448A(d) is applicable to the present case.

Generally, 11 *Del. C.* § 1448A deals with criminal history record checks for sales of firearms, and is located within the criminal code.[37] This statute has been amended several times since 2009, although each iteration of the statute included some type of defense available to firearm dealers or manufacturers.[38] In 2013, the legislature amended the statute to what is substantively the same as the 2016 version

---

[34] 15 U.S.C. § 7903(5)(A)(iii).

[35] *See Williams*, 100 A.D.3d at 147-48. A plaintiff would have to allege that a defendant "knowingly violated various federal or state statutes applicable to the sale or marketing of firearms within the meaning of the PLCAA's predicate offense." *Id.* at 148 (citations omitted).

[36] *See, e.g., KS&E Sports v. Runnels*, 72 N.E.3d 892, 904-05 (Ind. 2017) (finding PLCAA does not preempt its state immunity statute).

[37] *See generally* 11 *Del. C.* § 1448A.

[38] *See* 11 *Del. C.* § 1448A(i) (1995); 11 *Del. C.* § 1448A(i) (2009); 11 *Del. C.* § 1448A(c) (2012).

and the current version amended in October of 2018.[39] When § 1448A was amended in October of 2018, it remained largely unchanged, except for a change to subsection (l).[40] The complete defense found in subsection (d) remained the same.[41] It is this section that is central to the issues before this Court to determine whether 11 *Del. C.* § 1448A(d) affords a complete defense to compliant transfers of firearms and whether Cabela's, as a federal firearms licensee, is entitled to this complete defense.

## II. Application of Defense Under 11 *Del. C.* § 1448A(d)

### A. The complete statutory defense applies to compliant transfers.

Section 1448A(d) provides:

Compliance with provisions of this section shall be a complete defense to any claim or cause of action under the laws of this State for liability for damages arising from the importation or manufacture of any firearm which has been shipped or transported in an interstate foreign commerce. In addition, *compliance with the provisions [§§ 1448A(a) and (b)] of this section or § 1448B of this title, as the case may be, shall be a complete defense to any claim or cause of action under the laws of this State for liability for damages allegedly arising from the actions of the transferee subsequent to the date of said compliance wherein the claim for damages is factually connected to said compliant transfer.*[42]

---

[39] *See* 11 *Del. C.* § 1448A(c) (2013); 11 *Del. C.* § 1448A(d) (2016); *See* 11 *Del. C.* § 1448A(d) (Oct. 30, 2018).

[40] *See* 11 *Del. C.* § 1448A(l) (Oct. 30, 2018) (adding "except a person subject to an order for relinquishment under § 1448C(d)(1) of this title" to subsection (l)).

[41] *See* 11 *Del. C.* § 1448A(d) (Oct. 30, 2018).

[42] 11 *Del. C.* § 1448A(d) (emphasis added).

11

Section 1448A(a) provides that a licensed dealer or manufacturer of firearms shall not transfer a firearm to another person "without conducting a criminal history background check in accordance with regulations promulgated by the United States Department of Justice pursuant to the National Instant Criminal Background Check System ("NICS"), 28 C.F.R. §§ 25.1-25.11..." to determine if the transfer of a firearm would be in violation of federal or state law.[43]

Additionally, 11 *Del. C.* § 1448A(b) provides that a licensed dealer or manufacturer shall not sell a firearm to any person "unless and until being informed that it may *'proceed'* with the sale, transfer or delivery from inventory of a firearm by the Federal Bureau of Investigation (FBI), NICS Section pursuant to the request for a criminal history record check required by subsection (a) of this section...."[44] As both §§ 1448A(a) and (b) are provisions within § 1448A as described in § 1448A(d), the complete defense is applicable only when there is compliance of both (a) and (b).

Generally, statutory language should be accorded its plain meaning when it is possible.[45] If a statute is clear and unambiguous, then statutory interpretation is not

---

[43] 11 *Del. C.* § 1448A(a).

[44] 11 *Del. C.* § 1448A(b) (emphasis added).

[45] *Freeman v. X-Ray Associates, P.A.*, 3 A.3d 224, 230 (Del. 2010) (quoting *State v. Lillard*, 531 A.2d 613, 617 (Del. 1987)).

12

needed.[46] When § 1448A was amended in 2013 to the version that is substantially the same today, the Legislature intended to "expand[] the legal protections available to gun sellers and dealers who perform background checks in accordance with Delaware law."[47] Cabela's argues this provision encourages compliance by ensuring that when firearm sellers and dealers follow the law, they cannot be held liable for damages for actions that take place after a lawful transfer.

As pointed out by Plaintiffs, this statute does not protect firearm dealers or sellers who violate the law. This is true. However, this is a civil matter. Plaintiffs assert "willful" conduct on the part of Cabela's and cite to provisions of the law that deal with criminal consequences.[48] These are not applicable here. Therefore, the Court focuses solely on the language in § 1448A(d).

The plain language of § 1448A(d) mandates entitlement to a complete defense to any claim for damages arising from subsequent actions by the transferee when the seller complies with the provisions of this section, which includes conducting a

---

[46] *Id.* (citing *Silverbrook Cemetery Co. v. Dep't of Fin. Of New Castle County*, 449 A.2d 241 (Del. 1982); *Ryan v. State*, 791 A.2d 742, 743 (Del. 2002)).

[47] Def.'s Mot., Ex. 4 Del. H. Am. No. 7 to H.B. 35 syn., 147th Gen. Assem. (2013).

[48] *See* Am. Compl. ¶ 15. *See also* 11 *Del. C.* § 1448A(g) ("Any person who, in connection with the purchase, transfer, or attempted purchase or transfer of a firearm pursuant to subsection (a) of this section…wilfully and intentionally makes any materially false oral or written statement… intended or likely to deceive the licensee shall be guilty of a class G felony."); 11 *Del. C.* § 1448A(h) (making it a crime for a licensed dealer to "willfully and intentionally" sell or deliver "a firearm in violation of this section").

criminal history background check in accordance with federal regulations. Thus, Cabela's is only entitled to this complete defense if it performed a compliant transfer in accordance with the statute.

**B. The statutory defense applies to Plaintiffs' negligence claims that seek damages.**

Other jurisdictions have similar State laws that provide a defense or immunity to firearm dealers and sellers.[49] Some of these statutory provisions include language that the dealer may be sued if in violation of state or federal law.[50] The Court is guided by analysis conducted by the Supreme Court of Indiana in *KS&E Sports v.*

---

[49] *See* Neb. Rev. Stat. § 69-2417 ("Compliance with sections 69-2410 to 69-2423 shall be a defense by the Nebraska State Patrol and the licensee transferring a handgun in any cause of action under the laws of this state for liability for damages arising from the importation or manufacture, or the subsequent sale or transfer, of any handgun which has been shipped or transported in interstate or foreign commerce to any person who has been convicted in any court of any crime punishable by a term of more than one year."); Colo. Rev. Stat. § 13-21-504.5(1) ("A person or other public or private entity may not bring an action in tort, other than a product liability action, against a firearms or ammunition manufacturer, importer, or dealer for any remedy arising from physical or emotional injury, physical damage, or death caused by the discharge of a firearm or ammunition."); Ind. Code § 34-12-3-3 ("[A] person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for…recovery of damages resulting from the criminal misuse of a firearm or ammunition for a firearm by a third party."); Ark. Code Ann. § 16-116-302(b) ("A firearm, a nonpowder gun, or ammunition manufacturer, importer, or dealer shall not be held liable as a third party for the actions of another person involving the use of a firearm, a nonpowder gun, or ammunition in any cause of action.").

[50] *See* Colo. Rev. Stat. § 13-21-504.5(4) ("[A] firearms or ammunition manufacturer, importer, or dealer may be sued in tort for any damages caused by an act of the manufacturer, importer, or dealer in violation of a state or federal statute or regulation."); Ark. Code Ann. § 16-116-302(d)(1) ("[A] firearms, nonpowder gun, or ammunition manufacturer, importer, or dealer may be sued in tort for any damages proximately caused by an act of the manufacturer, importer, or dealer in violation of a state or federal law or regulation.").

14

*Runnels.*[51]

In *Runnels*, two individuals, Demetrious Martin, a convicted felon who could not purchase or possess a firearm, and Tarus Blackburn, browsed for firearms at the KS&E store.[52] Martin identified the firearm that he liked in the presence of a KS&E employee. Both Martin and Blackburn left the store without purchasing a firearm.[53] Blackburn returned later that day and purchased the firearm that Martin identified, after identifying himself as the buyer of record and completing the required paperwork.[54] The firearm was almost immediately transferred to Martin in the KS&E parking lot, and Martin used the firearm to shoot a police officer approximately two months later.[55] Blackburn was convicted of being a straw purchaser under 18 U.S.C. § 922(a)(6).[56] The injured officer filed a complaint against KS&E, Blackburn, and a KS&E officer, director, and shareholder, in which he alleged claims for negligence, conspiracy, and public nuisance.[57]

---

[51] 72 N.E.3d 892 (Ind. 2017).

[52] *See id.* at 896.

[53] *Id.*

[54] *See id.* at 896-97.

[55] *See id.* at 897.

[56] *See Runnels*, 72 N.E.3d at 897.

[57] *See id.*

KS&E and its corporate officer moved for judgment on the pleadings and argued that Indiana Code § 34-12-3-3 provided them immunity from the claims.[58] The trial court denied KS&E and the corporate officer's motion.[59] The appellate court ultimately affirmed the trial court's holding.[60] The Indiana Supreme Court affirmed, in part, and reversed, in part, and remanded the case back to the trial court for further consideration.[61]

The Indiana Supreme Court first found that the statutory bar under Indiana Code § 34-12-3-3(2) applies to unlawful firearm sales where the statute does not contain language that "limits its application to situations where a third party obtained the firearm, directly or indirectly, from a *lawful* sale."[62] In this case, the immunity "applie[d] even if the firearm had been sold unlawfully."[63] The Indiana Supreme

---

[58] *See Runnels*, 72 N.E.3d at 897 (arguing this immunity required immediate dismissal of the action against them).

[59] *See id.* at 897 (explaining that defendants sought an interlocutory appeal that was certified and accepted).

[60] *See id. See also KS&E Sports v. Runnels*, 66 N.E.3d 940 (Ind. Ct. App. 2016).

[61] *See Runnels*, 72 N.E.3d at 907-08 (affirming as to public nuisance claim and reversing as to all other claims, including negligence and conspiracy claims).

[62] *Id.* at 899 (emphasis in original).

[63] *Id.* The court further explained that the statute is an immunity provision even though it does not contain the word "immunity." *Id.* at 900. Before determining whether the statute provides immunity for KS&E, the court explained that the provision provides immunity for claims seeking damages, but does not provide immunity for claims seeking equitable relief. *Id.* at 900-01.

Court then determined whether KS&E was entitled to immunity under the statute as to the various theories of liability.[64] The court dismissed all claims seeking recovery of damages and found that §34-12-3-3(2) provided KS&E with immunity.[65] The public nuisance claim survived, to the extent it sought a remedy other than damages, i.e., an enjoyment or abatement.[66] Here, Plaintiffs seek damages only,[67] and there are similarities between *Runnels* and this case that call for the same result.

Yet one key difference not found in *Runnels* is that the Delaware statute requires compliance with the provisions of §1448A, which includes conducting a criminal background check in accordance with NICS and the federal regulations under 28 C.F.R. §§ 25.1 to 25.11.[68] Under 28 C.F.R. § 25.11, prohibited activities and associated penalties are detailed.[69] It provides that "State and local agencies, [federal firearm licensees], or individuals violating this subpart A shall be subject to a fine not to exceed $10,000 and subject to cancellation of NICS inquiry

---

[64] *See Runnels*, 72 N.E.3d at 901-04 (applying § 34-12-3-3(2) to plaintiff's negligence, conspiracy, public nuisance, and piercing the corporate veil claims).

[65] *See id.* at 901-03. The court similarly held that the piercing the corporate veil claim against Ellis must also be dismissed because KS&E cannot be liable for damages "so there can be no money judgment against the company for which Ellis can be held personally liable." *Id.* at 904.

[66] *See id.* at 903-04.

[67] Plaintiffs' count alleging public nuisance expressly seeks damages only.

[68] 11 *Del. C.* § 1448A(a).

[69] 28 C.F.R. § 25.11.

17

privileges."[70]   Thus, beyond criminal sanctions previously mentioned, there are provisions within our statute that discuss when a gun seller is subject to civil penalties.  Further, misuse or unauthorized access includes "State or local agencies', federal firearm licensees', or individuals' *purposefully furnishing incorrect information to the system* to obtain a 'Proceed' response, thereby allowing a firearm transfer."[71]   In order to impose liability against Cabela's, Plaintiffs need to prove that Cabela's demonstrated the purposeful conduct under  28 C.F.R. § 25.11 that then served to violate the provisions of §1448A.  On this record, Plaintiffs cannot do so.

### 1. Plaintiffs' allegations fail to assert facts in support of their claims.

In their First Amended Complaint, Plaintiffs spends a great portion of its Complaint discussing gun laws applicable to firearms dealers in general.[72]  Plaintiffs explain the federal and state law surrounding the transfer of firearms.[73]  The First Amended Complaint also advises the Court on the protocols and programs that have flowed from joint efforts, namely between the following entities: The United States

---

[70] 28 C.F.R. § 25.11(a).

[71] 28 C.F.R. § 25.11(b)(1) (emphasis added).

[72] Am. Compl. ¶¶ 10-36.

[73] *Id.* ¶¶ 12-15.

Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the National Shooting Sports Foundation ("NSSF"), and includes discussion of Form 4473 and the joint program entitled "Don't Lie for the Other Guy."[74] These allegations suggest that firearm sellers should follow recommended practices that have been proposed nationally. Mere proposed practices, protocols and recommendations are asserted to form the basis of the allegations against Cabela's although it is unclear how.

As to the specific allegations against Cabela's here in Delaware and Hardwick's role as a straw purchaser, they are limited to the following paragraphs of the First Amended Complaint:

41. On or about July 28, 2016, Kuligowski drove Hardwick to and from the Christiana Mall Cabela's, waiting in the parking lot during the transaction.

42. While inside the store, on information and belief, Hardwick displayed erratic behavior, running up and down the aisles, and remained in regular cell phone communication with Kuligowski through both text messages and phone calls.

43. When making the purchase, Hardwick listed a false address on the Form 4473.

44. When making the purchase, Hardwick made another false statement when she certified that she was the actual buyer/transferee on Form 4473.

---

[74] Am. Compl. ¶¶ 16-35.

45. Cabela's knew or should have known that a straw purchase was underway.[75]

Based on these assertions, Plaintiffs now defend against dismissal and suggest that Cabela's first, remained "willfully blind" to the above "red flags" that Hardwick was a straw purchaser and, second, that they "then knowingly provided 'incorrect' data to the NICS system—namely the name and associated data for an obvious 'straw purchaser'—in order to get a 'Proceed' response and sell the firearm *without checking the records of the actual purchaser*."[76]

First, Plaintiffs do not assert Cabela's missed a step when it conducted the proper checks on Hardwick. They provide no basis as to how Cabela's could have checked the records of anyone other than Hardwick as the actual purchaser. It was not disputed during oral arguments that it would have been a violation, improper, and possibly unlawful, to check the records of another person other than the person who is filling out the Form 4473 to purchase a firearm. This assertion that Cabela's could have, but did not check "the actual purchaser," cannot form the basis for a theory of liability as it is conclusory and unsupported by specific facts. The Court cannot draw unreasonable inferences in favor of the Plaintiffs as to this allegation.

Next, Plaintiffs argue that Cabela's should have known that Hardwick was a

---

[75] Am. Compl. ¶¶ 41-45.

[76] Pls.' Opp. at 18 (emphasis added).

straw purchaser because she was driven to the Christiana Mall by her boyfriend and he waited in the parking lot for her. Accepting this allegation as true, it is unclear how Cabela's could have been aware of this fact at the time of the purchase. Even if surveillance is available to support this "allegation" that her boyfriend was waiting in the parking lot, it is an unreasonable inference that Cabela's should have then suspected that Hardwick was a straw purchaser. Further, even if Cabela's had knowledge that she received a ride to the mall and someone was outside waiting for her, it is not clear how this fact establishes that Cabela's demonstrated the purposeful conduct required under 28 C.F.R. § 25.11 to trigger a violation under §1448A, that Cabela's purposefully provided incorrect information—Hardwick falsifying her address and that she was the actual purchaser—in order to make the sale.

Next, Plaintiffs allege that upon "information and belief" Hardwick "displayed erratic behavior, running up and down the aisles, and remained in regular cell phone communication with Kuligowski through both text messages and phone calls."[77] Accepting as true that the alleged erratic behavior included that she remained in regular communication with Kuligowski, Plaintiffs fail to assert how these facts support that Cabela's engaged in the purposeful conduct required under 28 C.F.R. § 25.11 to trigger a violation under §1448A, and that they purposefully provided "incorrect information" regarding Hardwick in order to make the sale. The

---

[77] Am. Compl. ¶ 42.

21

focus is on this incorrect information, which includes a false address and that she allegedly lied about being the actual purchaser.

During oral arguments, the record establishes this incorrect information became available well after the purchase at Cabela's. Police attempted to locate Hardwick at the address provided from her identification, but she was not living there when police investigated the fatal shooting. It was only after the police investigation began that it was determined that Hardwick did not live at the stated address on her identification. Plaintiffs cannot establish that these facts were available to Cabela's at the time they had her fill out the documentation. It is therefore unclear how it could be established that Cabela's was purposefully submitting "incorrect information" that was unknown at the time she was filling out Form 4473.

A motion to dismiss must be denied if a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint. Also accepting as true that Hardwick provided false information or that she was not the intended actual purchaser of the firearm, these facts only became known through police interviews two months later after Cabela's obtained the clearance to proceed with the transfer. Facts including her ride to the mall and her communications with her boyfriend are ancillary to the question of whether Cabela's violated the law and made an unlawful transfer based upon the information she

22

provided on Form 4473. Based on the timing of the events, it was the police investigation that discovered she falsified information. Therefore Plaintiffs fail to establish that Cabela's "purposefully" furnished incorrect information in order to obtain a "proceed" response from the system that allowed the firearm transfer to occur in violation of 28 C.F.R. § 25.11.

For these reasons, the Court finds that in drawing all reasonable inferences in favor of Plaintiffs, at this juncture, they are not able to recover under a reasonably conceivable set of circumstances susceptible under the Complaint. Cabela's performed a NICS background checked, received a "proceed" response, and otherwise complied with the relevant statutory provisions. Therefore, Cabela's is entitled to the complete defense under § 1448A(d) for all claims seeking damages. Here, since all of Plaintiffs' claims seek damages, Cabela's Motion to Dismiss is **GRANTED** as to all of the claims sounding in negligence, including the wrongful death and survival action claims.

## C. The statutory defense applies to Plaintiffs' public nuisance claim.

Plaintiffs allege a public nuisance claim,[78] but Cabela's contends that public nuisance claims are limited to land use situations.[79] Cabela's cites to *Sills v. Smith*

---

[78] Am. Compl. ¶¶ 110-123.

[79] Defs.' Reply Br. at 13 n.6.

& *Wesson Corp.*,[80] where this Court explained that "[w]hile no express authority exists requiring public nuisance claims be restricted to those based on land use, Delaware Courts remain hesitant to expand public nuisance."[81] This Court found that "Delaware has yet to recognize a cause of action for public nuisance based upon products."[82]

As Delaware Courts have yet to recognize a public nuisance a cause of action for products, this Court will not extend the public nuisance claims in this case especially where Plaintiffs fail to provide authority to support their position. Even if Plaintiffs could bring a public nuisance claim here, this claim would similarly fail for the same reasons as the negligence claims. In their First Amended Complaint, Plaintiffs bring a public nuisance claim against Cabela's and seek damages. As discussed above, Cabela's is entitled to the complete defense afforded in § 1448A(d) for claims seeking damages, which is the same relief sought in their public nuisance claim. Therefore, as to the public nuisance claim, Cabela's Motion to Dismiss is **GRANTED.**

---

[80] 2000 WL 33113806 (Del. Super. Dec. 1, 2000).

[81] *Sills*, 2000 WL 33113806, at *7 (dealing with Mayor and City of Wilmington suing handgun manufacturers and trade associations to recover monetary damages).

[82] *Id.* (holding that to the extent the Superior Court has jurisdiction for the public nuisance claim, "it is subsumed within their negligence claims").

24

## III. Plaintiffs fail to offer support to constitutional arguments.

The Court does not need to conduct a full analysis regarding the constitutional challenges raised here. In assessing the constitutionality of a statute, a legislative enactment is presumed constitutional.[83] A legislative act "should not be disturbed except in clear cases, and then only upon weighty considerations; a legislative enacted is cloaked with a presumption of constitutionality and should not be declared invalid unless its invalidity is beyond doubt."[84] All doubts are resolved in favor of the legislative act.[85] The party seeking to challenge a statute's constitutionality "has the burden of overcoming the presumption of its validity."[86]

### A. Constitutional Avoidance

Plaintiffs' argument that § 1448A triggers the doctrine of constitutional avoidance is unavailing. The doctrine of constitutional avoidance "is a tool for choosing between two competing plausible interpretations of statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."[87] Here, it is not applicable. There is no choice

---

[83] *Snell v. Engineered Systems & Designs, Inc.*, 669 A.2d 13, 17 (Del. 1995) (citing *Opinion of the Justices*, 425 A.2d 604, 605 (Del. 1981)).

[84] *Id.* (quoting *Justice v. Gatchell*, 325 A.2d 97, 102 (Del. 1974)).

[85] *Opinion of the Justices*, 425 A.2d 604, 606 (Del. 1981) (quoting *Gatchell*, 325 A.2d at 102).

[86] *Id.* (quoting *Gatchell*, 325 A.2d at 102).

[87] *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005) (citations omitted).

"between two competing plausible interpretations of statutory text" nor does the Court have "grave doubts" about the constitutionality of the statute.[88] The legislative intent is clear from the text and purpose of the statute.[89] The intent was to provide protections to gun dealers who conduct compliant transfers; therefore, the doctrine of constitutional avoidance does not apply.

## B. Remedy for Injury Clause under Article I, § 9 of the Delaware Constitution

Under Article I, § 9 of the Delaware Constitution:

> All courts shall be open; and every person for an injury done him or her in his or her reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.[90]

Plaintiffs argue § 1448A violates this constitutional provision because it deprives a "specific class of plaintiffs of all common law remedies without a viable substitute."[91]  This Court disagrees.

The focus of the language of Article I, § 9 of the Delaware Constitution "is to

---

[88] *See Ileto v. Glock*, 565 F.3d 1126, 1142-43 (9th Cir. 2009) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998)).

[89] *See id.* at 1142-43.

[90] Del. Const. art. I, § 9.

[91] Pls.' Opp. at 26.

assure a method by which an injured person may be compensated reasonably for his injury."[92] The legislature's power to limit or expunge common law rights "must be exercised in conformity with the dictates of due process."[93] "This court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts."[94] Article I, § 9 of the Delaware Constitution is meant to "secure the citizen against unreasonable and arbitrary deprivation of rights...."[95]

Section §1448A does not create an unreasonable and arbitrary deprivation of rights.[96] Here, the legislature determined a legitimate purpose exists to provide protections to gun dealers who perform compliant transfers in order to incentivize these dealers to perform background checks and comply with federal and state law. Plaintiffs still have a right to access the court when the transfer of the firearm is not

---

[92] *Young v. O.A. Newton & Son Co.*, 477 A.2d 1071, 1078 (Del. Super. 1984).

[93] *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413, 418 (Del. 1984).

[94] *Id.* at 417-418 (quoting *Klein v. Catalano*, 437 N.E.2d 514, 522 (Mass. 1982)) (holding that 10 *Del. C.* § 8127 does not violate the Remedy for Injury Clause of the Article I, Section 9 of the Delaware Constitution).

[95] *Gallegher v. Davis*, 183 A. 620, 624 (Del. Super. Jan. 13, 1936) (upholding the statute at issue under Article I, § 9).

[96] *See Runnels*, 72 N.E.3d at 905-06 (discussing Indiana's similar open-courts constitutional provision and holding that legislature's policy choice to adopt the firearm dealer immunity statute was not "irrational or illegitimate").

compliant with the statutory provisions.

Also, Plaintiffs' inability to recover damages against the firearm seller in this case does not mean that they are denied access to the courts. Section 1448A does not prevent Plaintiffs from seeking compensation for their damages and suing Hardwick, Kuligowski, or the persons who were charged with shooting.

A legislative enactment is presumed constitutional, and Plaintiffs here have the burden of overcoming the presumption of its validity.[97] Plaintiffs have not met that burden. Plaintiffs failed to establish how the statute creates an unreasonable and arbitrary deprivation of rights. Therefore, they fail to establish how 11 *Del. C.* § 1448A(d) is unconstitutional.

### C. Due Process Clause of the Fourteenth Amendment of the United States Constitution

Plaintiffs argue that if § 1448A(d) is read to bar Plaintiffs' claims, it "would run afoul of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[98] Plaintiffs argue that "the Supreme Court has not approved of wholesale denial of any remedy for injured plaintiffs," even though some "common law rights of action may be modified or extinguished by legislative action."[99] The

---

[97] *See Snell*, 669 A.2d at 17; *Opinion of the Justices*, 425 A.2d at 606.

[98] Pls.' Opp. at 27.

[99] *Id.*

28

Court finds that Plaintiffs' Due Process argument fails.

The Supreme Court of the United States has explained that the case law has established that "[a] person has no property, no vested interest, in any rule of the common law."[100] Further, the Delaware Supreme Court has found that "neither the Federal nor the State Constitution forbids legislative abolition of a common law cause of action to attain a permissible legislative objective."[101] Additionally, "due process preserves a right of action which has accrued or vested before the effective date of the statute."[102] Here, the statute was amended before Plaintiffs' cause of action accrued and the Plaintiffs did not have a claim that was subsequently taken away by the legislature. The Plaintiffs fail to establish how the statute runs afoul of the Due Process Clause of the Fourteenth Amendment.

### D. Equal Protection Clause of the Fourteenth Amendment of the United States Constitution

Lastly, Plaintiffs argue that "[d]epriving victims of gun industry negligent and criminal conduct of remedies also violates the Equal Protection clause of the

---

[100] *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88 n.32 (1978) (quoting *Second Employers' Liability Cases*, 223 U.S. 1, 50 (1912)).

[101] *Cheswold*, 489 A.2d at 417 (citing *Silver v. Silver*, 280 U.S. 117, 122 (1929); *Bailey v. Pennington*, 406 A.2d 44, 47 (Del. 1979), *appeal dismissed*, 444 U.S. 1061 (1980); *Gallegher*, 183 A. at 624) (finding that 10 *Del. C.* § 8127 "is rationally related to a permissible legislative objective" so as not to violate Federal or State due process guarantees).

[102] *Id.* at 418 (citations omitted).

29

[Fourteenth] Amendment."[103] Plaintiffs argue that "there is no rational basis to deny remedies for victims of wrongful gun industry conduct…when victims and perpetrators of far less dangerous or culpable acts of negligence by sellers of products from b.b. guns to cigarettes are fully subject to the law's benefits and costs."[104] This Court finds this argument to be without merit.

The Equal Protection Clause requires that a legislative classification "must bear a rational relationship to a legitimate state purpose," in the absence of a suspect classification or fundamental right.[105] Classifications that affect some groups of citizens differently than others are prohibited when they arbitrarily or irrationally discriminate among similarly situated persons.[106] Plaintiffs do not allege that they are persons of a suspect classification or that they were denied a fundamental right to invoke a heightened or stricter level of judicial scrutiny. Here, the purpose of § 1448A(d) is rationally related to a legitimate state purpose. Gun dealers are incentivized and encouraged to make compliant transfers under state and federal law if they are protected from causes of action arising from such sales. Plaintiffs have

---

[103] Pls.' Opp. at 29.

[104] *Id.*

[105] *Cheswold*, 489 A.2d at 418 (citing *Zobel v. Williams*, 457 U.S. 55 (1982)).

[106] *Id.* (citing *McGowan v. Maryland*, 366 U.S. 420 (1961); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483 (1955); *Railway Express Agency, Inc. v. New York*, 336 U.S. 106 (1949)).

failed to establish how the statute violates the Equal Protection Clause of the Fourteenth Amendment.

## CONCLUSION

The Court does not minimize the tragedy that occurred in this case. The nation is rocked by gun violence tragedies caused by the incomprehensible acts of others—such as here with Keshall Anderson, it is difficult to wrap our heads around random killings. Nevertheless, the language of 11 *Del C.* § 1448A(d) is clear. This Court did no more than apply the facts on this record to the laws applicable in this case. Any changes to said laws are for the Legislature.

Plaintiffs fail to state a claim under Rule 12(b)(6). In accepting all of the well-pleaded allegations in Plaintiffs' First Amended Complaint as true, and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Cabela's is entitled to the complete defense provided in § 1448A(d) because it performed a compliant transfer of the firearm to Hardwick.

For the reasons stated, Cabela's Motion to Dismiss is granted as to all claims seeking damages. As Plaintiffs seek damages for each claim in their First Amended Complaint, all of the claims are dismissed without prejudice. The Court also finds that Plaintiffs failed to establish that 11 *Del. C.* § 1448A(d) violates the United States or Delaware Constitutions.

Therefore, Cabela's Motion to Dismiss is **GRANTED.**

Vivian L. Medinilla
Judge